# Wytheville.

## CULTON HALL v. COMMONWEALTH.

### June 26, 1926.

1. INTOXICATING LIQUOR—*General Reputation of Accused.*—The right of the Commonwealth to prove the general reputation as a violator of the prohibition law of one accused of violation of the prohibition law cannot be questioned.

2. INTOXICATING LIQUOR—*General Reputation—Selling Through Agent.*— The fact that the reputation of accused was that instead of selling liquor personally he had men selling it for him is admissible.

3. INTOXICATING LIQUOR—*General Reputation—Rumor.*—In a prosecution for violation of the prohibition act, it is perfectly competent for witnesses as to the general reputation of accused as a violator of the prohibition law, to testify that they based their testimony upon rumor in the neighborhood in which the accused lived.

4. INTOXICATING LIQUOR—*Evidence—Testimony that Accused went upon the Bond of one who had Actual Possession of the Whiskey Found in Defendant's House.*—Upon the prosecution of accused for storing for sale the Commonwealth introduced evidence to the effect that defendant had gone on the bond of one C, who had actual possession of whiskey in defendant's house and who was arrested and indicted at the same time accused was arrested and indicted. If the accused was guilty at all, he was jointly guilty with C, but he denied any knowledge of the presence of the ardent spirits in his house.

   *Held:* That the fact that accused afterwards went on the bond of his alleged accomplice was a circumstance which the jury had a right to consider under the circumstances; it was admissible to show the relation between accused and C.

5. INTOXICATING LIQUOR—*Evidence—Testimony of Officers that they went to Defendant's Place to Search for Liquor on Information that there had been Liquor there.*—In a prosecution for storing for sale liquor, the court permitted certain officers to testify that they went to defendant's place in search of ardent spirits upon information that there had been whiskey at the home of the accused. The officers stated only the reason for making the search of defendant's premises, which resulted in discovery of five gallons of whiskey in defendant's dwelling house.

   *Held:* That accused could not have been prejudiced by admission of this evidence.

6. INTOXICATING LIQUOR—*Storing for Sale—Evidence Sufficient to Sustain a Conviction.*—In the instant case officers in a search of defendant's house found defendant's wife and two others with a five gallon keg of whiskey and five jugs in a sack and a rubber siphon. One of those present was proven to be a notorious bootlegger and he was in the act of removing the bung from the five gallon keg. The other party present was also a bootlegger. Other empty bottles and jugs smelling of whiskey were found on the premises. Shortly after the arrival of the officers, accused came down stairs. Accused denied all knowledge of the presence of the liquor and his testimony was supported by that of the others in the house. The reputation of accused was bad as a violator of the prohibition law.

    *Held:* That the evidence was sufficient to sustain a verdict of guilty on a charge that accused did unlawfully manufacture, transport, sell, offer, keep, store and expose for sale, etc., ardent spirits, etc.

7. APPEAL AND ERROR—*Reversal—Section 6363 of the Code of 1919.*—Under section 6363 of the Code of 1919, the Supreme Court of Appeals cannot interfere with a judgment when unable to say that the verdict of the jury was plainly wrong or without evidence to support it.

Error to a judgment of the Circuit Court of Wise county.

*Affirmed.*

The opinion states the case.

*W. W. G. Dotson,* for the plaintiff in error.

*John R. Saunders,* Attorney General, *Leon M. Bazile* and *Lewis H. Machen,* Assistant Attorneys General for the Commonwealth.

CHICHESTER, J., delivered the opinion of the court.

Culton Hall was indicted in the Circuit Court of Wise county for violation of the prohibition law. He pleaded not guilty, and upon his trial was found guilty and sentenced to pay a fine of $500 and to be imprisoned for ninety days.

He asks that this judgment be reversed for three reasons:

(1) Because four witnesses, testifying on behalf of the Commonwealth, and who had testified that the reputation of the accused for violation of the prohibition law was bad, were permitted by the court, as the foundation upon which their testimony of bad reputation rested, to say that it was rumored among the people of the neighborhood that you could get liquor there (meaning at the home of the accused), but that they had never heard that the accused sold it, but that he had men around there selling it for him.

[1-2] The right of the Commonwealth to prove the general reputation of one accused of violation of the prohibition law cannot be questioned. The fact that the reputation of this particular person was that, instead of selling liquor personally, he had men selling it for him does not alter the situation. He was equally guilty of violating the law whether he sold ardent spirits himself or sold it through others. It was perfectly competent for the witnesses to testify that they based their testimony upon rumor in the neighborhood in which accused lived. There was no error in the admission of this evidence.

[4] (2) Because, as appears from bill of exception No. 2, the court permitted certain witnesses to testify over objection of defendant's counsel that defendant had gone on the bond of James Cooper, who had actual possession of the five gallon keg of whiskey in defendant's house, and who was arrested and indicted at the same time the accused was arrested and indicted.

If the accused was guilty at all, he was jointly guilty with Cooper, but he denied any knowledge of the presence of the ardent spirits in his house. The fact that he afterwards went on the bond of Cooper was a circumstance which the jury had a right to consider under the circumstances. It was admissible for what

it was worth to show the relations of Cooper and the accused.

[5] From the same bill of exceptions it appears that the court permitted certain officers to testify that they went to defendant's place in search of ardent spirits upon information that there had been whiskey at the home of the accused. The officers stated only the reason for making the search of defendant's premises, which search resulted in discovery of five gallons of whiskey in defendant's dwelling house. Accused could not have been prejudiced by the admission of this evidence.

[6] (3) The third assignment is that the court erred in not setting aside the verdict because it was contrary to the law and the evidence.

The evidence discloses that in October, 1924, about day light, the sheriff, the deputy sheriff, a county policeman and a citizen went to the home of the accused in Wise county and found James Cooper and Hugh Minor and the accused's wife in the kitchen of the house of the accused, with a five gallon keg of whiskey (from which James Cooper was undertaking to remove the bung), five jugs in a sack, and a rubber siphon. James Cooper was proven to be a notorious bootlegger, and had been living at the house with the accused for some time. Hugh Minor also was a bootlegger and had been convicted of violation of the prohibition law. The officers also found some empty bottles in the kitchen, and some empty bottles and jugs in another room, a number of five gallon kegs and jugs near a small outbuilding in the yard of accused, all of which smelled of whiskey. When the officers went into the kitchen of accused, they arrested Cooper and Minor. Cooper stated that the whiskey was his, that he had just brought it into the house that morning before day-

light, and that the accused knew nothing of its presence in his house; that he was about to siphon it into the jugs and hide it in the hills when the officers appeared; and that Hugh Minor saw him when he came in with the whiskey and followed him in to get a drink.

While the officers were in the kitchen, and shortly after their arrival there, the accused (Hall) came downstairs with his shoes on, but unlaced.

All the officers testified that the reputation of accused was bad as a violator of the prohibition law; that he had the reputation of being a moonshiner; and that they had not heard that he sold liquor himself, but that he kept men around him to sell it for him.

Hugh Minor testified at the trial on behalf of the defendant. He stated that early on the morning of the arrest he saw James Cooper go in Culton Hall's front gate with something in his arms which he took to be a keg of whiskey; that he lived about fifty feet from Hall's home; that he followed Cooper into the kitchen to get a drink, and that before Cooper could get the keg open the officers appeared; that there was some loud talking and accused came downstairs with his shoes untied; and that accused had tuberculosis and slept on the upstairs porch.

Culton Hall, testifying in his own behalf, stated that Cooper worked for him; that he knew he would drink, and had told him at different times not to bring liquor to his house; that he had no interest in the liquor; that he did not know Cooper had brought it to his house, or that he was up until he went downstairs; that Cooper slept downstairs and he (accused) had tuberculosis and slept on an upstairs porch; and that he knew Cooper had been placed under bond for violation of the prohibition law because he had gone on his bond.

The indictment upon which the accused was tried charged that he did "unlawfully manufacture, transport, sell, offer, keep, store and expose for sale," etc., "ardent spirits," etc.   There was no bill of particulars asked for or given, and the verdict was a general verdict of guilty, with the penalty fixed as heretofore stated; but it is manifest from the evidence that the accused, under this indictment, could only have been found guilty of keeping or storing ardent spirits for sale.

We think the evidence, as a whole, is sufficient to support the verdict of guilty.   It indicates irresistibly that the home of accused was headquarters for bootleggers.   The accused had the reputation of being a violator of the prohibition law who sold liquor through others.   Cooper, a notorious bootlegger, lived with him.   Not only did the officers find a five gallon keg of whiskey in defendant's house on the morning of the raid, but a lot of jugs and empty bottles were found in the kitchen, empty bottles and jugs were found in another room, and a lot of empty jugs in the yard near a small outbuilding, all smelling of whiskey.   It is true all the whiskey found in the house was in the immediate possession of Cooper, and it may be said to be established that he had just brought that particular lot of whiskey upon the defendant's premises.   The defendant's wife was in the kitchen where the siphoning of the whiskey into jugs was taking place, or was about to take place, and the record does not show that any protest came from her.   Accused and Cooper were close friends and associates, so close that when Cooper was required to give bond to answer some charge of violation of the prohibition law, accused went on his bond.   All these circumstances, coupled with the finding of the empty bottles and jugs in other parts of the

house and in the yard, all smelling of whiskey, justified the jury in reaching the conclusion that this bringing in of whiskey in large quantities and siphoning it off into vessels convenient for retail purposes had been going on on the defendant's premises for a long time with his consent and approval, and, considering his reputation, with his participation.

[7] In view of all the testimony in the case and the fair inferences which the jury had a right to draw from all the facts proven, we are unable to say that the verdict of the jury is plainly wrong, or without evidence to support it. Under section 6363 of the Code, unless we can do this, we cannot interfere with the judgment.

*Affirmed.*